2016 OCT -5 PM 12:37 USBC SDF-MIA

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re: Case No. 15-20459-LMI

CHARLES B. MCCOMAS Chapter

Debtor /

## APPLICATION TO WITHDRAW UNCLAIMED FUNDS

Applicant, Leyza F. Blanco, Esquire of Gray Robinson, P.A., applies to this court for entry of an order directing the clerk of the court to remit to the applicant the sum of $2,012.72, said funds having been deposited into the Treasury of the United States pursuant to 28 U.S.C. §2041 as unclaimed funds held in the name of BAC Florida Bank. Applicant further states that:

1. (Indicate one of the following items:)

___ Applicant is the individual listed in the "Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk" under whose name these funds were deposited and states that no other application for this claim has been submitted by or at the request of this applicant. If funds were deposited in the names of both husband and wife, both must sign this application, or if one spouse is requesting release of funds in the name of that spouse only, applicant must attach a notarized affidavit stating why the funds should be released to only one spouse and not in the name of both. Also attached is a copy of an official government photo id of applicant to prove applicant's identity.

___ Applicant is either a family member or other authorized personal representative of an incapacitated or deceased individual in whose name funds were deposited or a successor in interest to the individual or business under whose name the funds were deposited. **An original "power of attorney" conforming to the applicable Administrative Office of the US Court's Director's Form and/or other supporting documents, including probate documents which indicate applicant's entitlement to this claim are attached and made a part of this application.** Also attached is a copy of an official government photo id of applicant to prove applicant's identity.

___ Applicant is the duly authorized representative for the business or corporation listed in the "Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk" under whose name these funds were deposited. Applicant has reviewed all applicable records and states that no other application for this claim has been submitted by or at the request of this claimant. **A Local Form "Affidavit of Claimant" (LF-28) and an original "power of attorney"**

**conforming to the applicable Administrative Office of the US Court's Director's Form are attached and made a part of this application.**

x___ Applicant is an attorney or a "funds locator" who has been retained by an individual or business or corporation under whose name the funds were deposited. Applicant has obtained an original "power of attorney" **conforming to the applicable Administrative Office of the US Court's Director's Form** from the individual claimant or the duly authorized representative for the business or corporation named as the claimant in the notice of deposit of funds into the court. **An original "power of attorney", conforming to the Official Bankruptcy Form and a Local Form "Affidavit of Claimant" (LF-28) are attached and made a part of this application.**

___ Applicant is an attorney or a "funds locator" who has been retained by the debtor in this case to claim funds deposited in the name of another individual or business or corporation. Applicant has obtained and attached to this application an original "power of attorney" **conforming to the applicable Administrative Office of the US Court's Director's Form** from the debtor (if joint case, both debtors) who are seeking to claim these funds. Applicant has also attached to this application a notarized affidavit from the debtor detailing debtor's right to the funds deposited in the name of the creditor and has attached copies of any exhibits to substantiate this right. Also attached is a copy of an official government photo id of the debtor to prove debtor's identity. The applicant has also attached a certificate of service reflecting that a copy of this application and required attachments has been served on the creditor whose funds the debtor is seeking to claim and on the trustee who deposited the funds with the clerk of court. If this is a joint debtor case, both husband and wife must sign the power of attorney, or if one spouse is requesting release of funds in the name of that spouse only, applicant must attach a notarized affidavit stating why the funds should be released to only one spouse and not in the name of both.

___ Applicant is the debtor seeking to claim funds deposited in the name of another individual or business or corporation. Applicant has attached to this application a sworn affidavit detailing debtor's right to the funds deposited in the name of the creditor and has attached copies of any exhibits to substantiate this right. Also attached is a copy of an official government photo id of applicant to prove debtor's identity. The debtor has also attached a certificate of service reflecting that a copy of this application and required attachments has been served on the creditor whose funds the debtor is seeking to claim and on the trustee who deposited the funds with the clerk of court. If this is a joint case, both husband and wife must sign this application, or if one spouse is requesting release of funds in the name of that spouse only, applicant must attach a notarized affidavit stating why the funds should be released to only one spouse and not in the name of both.

2. Applicant has made sufficient inquiry and has no knowledge that this claim has been previously paid, that any other application for this claim is currently pending

before this court, or that any party other than the applicant is entitled to submit an application for this claim.

3. Applicant has provided notice to the U.S. Attorney pursuant to 28 U.S.C. §2042.

Dated: September 30, 2016

BAC FLORIDA BANK,
Name Under Which Funds Were Deposited

Scheduled Claim
Claim Number

US Mortgage Finance III, LLC
Name of Party on Whose Behalf Application Was Filed*

Address: 1007 North Orange Street,

Suite 1200, Wilmington, DE 19801

Signature of Applicant
(Note: In addition to signing, complete all information below)

Florida Bar No.: 104639
Last Four Digits of SS# ________

Tax ID (EIN #) 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

Leyza Blanco, Shareholder
Print Name and Title of Applicant

GrayRobinson, P.A.
Print Company Name

333 SE 2nd Avenue, Suite 3200
Print Street Address

Miami, FL 33131
Print City and State

(305) 416-6880
Telephone (including area code)

*Attach copy of official government photo id for all parties on whose behalf this application is being filed.

Sworn to and Subscribed before me

on September 30, 2016

NOTARY PUBLIC, AT LARGE
STATE OF Florida

JENNIFER MAHAFFEY
Notary Public - State of Florida
My Comm. Expires Jun 1, 2018
Commission # FF 102068
Bonded Through National Notary Assn.
NOTARY PUBLIC
STATE OF FLORIDA

FLD'161005PM1237USBCSDF-MIA

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re: Case No. 15-20459-LMI

CHARLES B. MCCOMAS Chapter

_____Debtor_____/

**AFFIDAVIT OF CLAIMANT**

1. I, Henry B. Howard, am

( X ) the duly authorized representative for claimant "business" as indicated in the attached corporate power of attorney who has granted a power of attorney to Leyza F. Blanco, Esquire, an attorney, to submit an application to withdraw unclaimed funds on my behalf;

and I am seeking payment of unclaimed funds in the amount of $2,012.72 deposited in this court in the name of BAC FLORIDA BANK and "scheduled" on the Debtor's Schedule D in the name of U.S. Mortgage Finance II, LLC. (D.E. 1, Page 13).

2. Claimant History:

A. On January 25, 2006, the Debtor and his spouse, Leandra F. McComas executed an InterestFirst Adjustable Rate Note in favor of BAC Florida Bank (the "Note") which is secured by that certain Mortgage dated January 25, 2006 and recorded on February 21, 2006 in the Official Records Book 24252, Page 1818 of the Public Records of Miami-Dade County, FL. (the "Mortgage"). A true and correct copy of the Note is attached hereto as Composite Exhibit A together with a copy of the Notice of Filing the original Note filed on December 9, 2015 in *U.S. Mortgage Finance II, LLC v. Charles B. McComas et. al.*, Case No.: 2015-006731-CA-01, for the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Foreclosure Action"). A copy of the Mortgage is attached as Exhibit B.

B. The Note and Mortgage were assigned by BAC Florida Bank to U.S. Mortgage Finance II, LLC pursuant to that certain Assignment of Mortgage recorded on October 22, 2006 in Official Records Book 25030, Page 225 of the Public Records of Miami-Dade County, Florida. A true and correct copy of the Assignment of Mortgage from BAC Florida Bank to U.S. Mortgage Finance II, LLC is attached hereto as Exhibit C.

C. On March 30, 2011, the Debtor and his spouse, Leandra F. McComas executed and Interest First Period Adjustable Rate Note (the "Modified Note") which modified the Note and a Mortgage and Note Modification and Extension Agreement ("Modified Mortgage") which modified the Mortgage. The Modified Mortgage was

recorded on June 8, 2011 in the Official Records Book 27714, Page 4715 of the Public Records of Miami-Dade County, Florida. A true and correct copy of the Modified Note is attached hereto as Composite Exhibit D together with a copy of the Notice of Filing the original Modified Note filed in the Foreclosure Action on December 9, 2015.

D. On September 23, 2015, U.S. Mortgage Finance II, LLC executed that certain Assignment of Note, Mortgage and Loan Documents in favor U.S. Mortgage Finance III, LLC assigning all right, title and interest in the Note, Mortgage, Modified Note, Modified Mortgage and all related documents to U.S. Mortgage Finance III, LLC. A true and correct copy of the Assignment of Note, Mortgage and Loan Documents in favor of U.S. Mortgage Finance III, LLC is attached hereto as Exhibit E.

E. On October 22, 2015, the court in the Foreclosure Action entered an Order of Substitution As to Party Plaintiff substituting U.S. Mortgage Finance III, LLC for U.S. Mortgage Finance II, LLC in the Foreclosure Action. A true and correct copy of the Order of Substitution As to Party Plaintiff is attached as Exhibit F.

F. On December 18, 2015, a Final Judgment of foreclosure was entered in the Foreclosure Action and on May 10, 2016, a Certificate of Title was issued to U.S. Mortgage Finance III, LLC concluding the Foreclosure Action. A true and correct copy of the Certificate of Title is attached as Exhibit G.

G. Attached as Exhibit H is a true and correct copy of a Florida Driver's License my government issued identification.

3. I or U.S. Mortgage Finance III, LLC have neither previously received remittance for these funds nor have contracted with any other party other than the person named as a "funds locator" or attorney in paragraph one above to recover these funds.

I hereby certify that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: September 16, 2016

signature of claimant or representative of "business" claimant

Henry B. Howard
print name

President
title

38-3913967
Last Four Digits of Social Security # or Tax ID# (EIN #) (Note: attach a copy of an official government photo id such as a driver's license or passport")

1200 Brickell Ave, Suite 310, Miami, FL 33131
address

# EXHIBIT "A"

## InterestFirst[SM] ADJUSTABLE RATE NOTE
(One-Year Treasury Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| January 25, 2006 | CORAL GABLES | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

700 BILTMORE WAY, #801, CORAL GABLES, FLORIDA 33134

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 310,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BAC FLORIDA BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.8750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on March 1, 2006. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on February 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 169 MIRACLE MILE, R-10
CORAL GABLES, FLORIDA 33134
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $1,776.04 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

1418455950

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument
Amended for Florida
VMP -171N(FL) (0112) Form 3531 11/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5 Initials:
22632-01

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of February, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Fourth percentage points ( 3.2500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.8750 % or less than 4.8750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.8750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

5. BORROWER'S RIGHT TO PREPAY SEE ATTACHED PREPAYMENT PENALTY ADDENDUM OR RIDER WHICH AMENDS THIS SECTION.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

1418455950

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 7.0000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _______________(Seal)<br>CHARLES BOWMAN MCCOMAS -Borrower | _______________(Seal)<br>LEANDRA F. MCCOMAS -Borrower |
| _______________(Seal)<br>-Borrower | _______________(Seal)<br>-Borrower |
| _______________(Seal)<br>-Borrower | _______________(Seal)<br>-Borrower |
| _______________(Seal)<br>-Borrower | _______________(Seal)<br>-Borrower |

*[Sign Original Only]*

1418455950

LOAN NUMBER: 1418455950

# PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provision, notwithstanding any provisions to the contrary contained in said Promissory Note, and Real Estate Mortgage securing same.

This Addendum is attached and made a part of that certain Promissory Note given by CHARLES BOWMAN MCCOMAS and LEANDRA F. MCCOMAS

(Borrower) to BAC FLORIDA BANK
(Lender), which Note is in the principal amount of $ 310,000.00

## PREPAYMENT PENALTY

The Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When making a prepayment, the Borrower must notify the Lender in writing that they are doing so.

If the Borrower makes a full prepayment within twelve (12) months of the date of the Note, it shall be accompanied by deferred fees equal to 3% of the original loan balance; if the Borrower makes a full prepayment more than twelve (12) but less than twenty-four (24) months from the date of the Note, it shall be accompanied by deferred fees equal to 2% of the original loan balance; if the Borrower makes a full prepayment more than twenty-four (24) but less than thirty-six (36) months from the date of the Note, it shall be accompanied by 1% of the original loan balance.

If the Borrower makes a partial prepayment in excess of 20% of the original loan balance within twelve (12) months of the date of the Note, it shall be accompanied by deferred fees equal to 3% of the principal payment in excess of 20% of the original loan balance; if the Borrower makes a partial prepayment in excess of 20% of the original loan balance more than twelve (12) but less than twenty-four (24) months from the date of the Note, it shall be accompanied by deferred fees equal to 2% of the principal payment in excess of 20% of the original balance; if the Borrower makes a partial prepayment in excess of 20% of the original loan balance more than twenty-four (24) months but less than thirty-six (36) months from the date of the Note, it shall be accompanied by 1% of the principal payment in excess of 20% of the original loan balance.

After three years from the date of the Note, the Note may be paid in whole or in excess of the 20% of the original balance without penalty. If the Borrower makes partial payments, there will be no changes in the due date of the monthly payments. The Lender (Holder) shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

[signature] 01/25/06
Borrower CHARLES BOWMAN MCCOMAS Date

[signature] 01/25/06
Borrower LEANDRA F. MCCOMAS Date

Borrower Date

Borrower Date

Borrower Date

Borrower Date

Borrower Date

Borrower Date

Filing # 35355380 E-Filed 12/09/2015 03:57:36 PM

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-006731-CA-01

U.S. MORTGAGE FINANCE II, LLC, a Delaware limited liability company,

Plaintiff,

vs.

CHARLES B. MCCOMAS a/k/a CHARLES BOWMAN MCCOMAS, Individually; LEANDRA F. MCCOMAS, Individually; DAVID WILLIAM HOTEL CONDOMINIUM ASSOCIATION, INC., a Florida corporation; DOUGLAS J. KING ENTERPRISES, INC., a Florida corporation; UNKNOWN TENANT #1; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES OR OTHER CLAIMANTS,

Defendants.

_______________________________________/

**NOTICE OF FILING**

COMES NOW, Plaintiff, U.S. MORTGAGE FINANCE III, LLC, by and through undersigned counsel, and gives notice of filing the following in the instant case:

**ORIGINAL INTERESTFIRST ADJUSTABLE RATE NOTE**
**DATED JANUARY 25, 2006**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of ______ December, 2015 a true and correct copy of the foregoing has been furnished via email to the following at the email address indicated below:

Attorneys for David William Hotel
Condominium Association, Inc.
Siegfried, Rivera, Hyman, Lerner, De la Torre,
Mars & Sobel, P.A.
8211 West Broward Blvd., Suite 250
Plantation, FL 33324
Awilda Esteras, Esq.
Email: Association9@srhl-law.com
Email: collections4@srhl-law.com
Email: aesteras@srhl-law.com

Additionally, I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. mail this 9th day of December, 2015 to the following:

LEANDRA F. MCCOMAS
700 Biltmore Way #801
Coral Gables, FL 33134

CHARLES B. MCCOMAS a/k/a CHARLES
BOWMAN MCCOMAS
700 Biltmore Way #801
Coral Gables, FL 33134

Douglas J. King Enterprises, Inc.
c/o Registered Agent
Douglas J. King
15604 SW 73 CT
Miami, FL 33157

By: s/Kathleen M. Sales, Esq.
Kathleen M. Sales/FBN: 0143200
Primary Email: kms@martlaw.com
Secondary Email: service@martlaw.com
GUTIERREZ & ASSOCIATES
Attorneys for Plaintiff
U.S. MORTGAGE FINANCE III, LLC
1200 Brickell Avenue, Suite 350
Miami, Florida 33131
Tel: 305) 577-4500
Fax: (305) 577-8690

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 7.0000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**ALLONGE TO PROMISSORY NOTE**

Pay without recourse to the order of:
U. S. MORTGAGE FINANCE II, LLC

BAC Florida Bank

By: ______________________
German Merida
Senior Vice President, Operations Manager

**Loan Information:**

| | |
|---|---|
| Loan Number: | [redacted] |
| Borrower(s): | MCCOMAS, CHARLES BOWMAN<br>MCCOMAS, LEANDRA F |
| Property Address: | 700 BILTMORE WAY UNIT 801<br>CORAL GABLES, FL 33134 |
| Loan Amount: | $310,000.00 |
| Promissory Note Date: | 1/25/2006 |

**Loan #** ██████

**ALLONGE**

This Allonge is attached to and made a part of the Adjustable Rate Note dated January 25, 2006 in the original principal amount of $310,000.00, made by Charles Bowman McComas and Leandra F. McComas to the order of BAC Florida Bank (the "Note"), which Note was assigned to U.S. Mortgage Finance II, LLC, a Delaware limited liability company.

The Note is endorsed as follows:

Pay to the order of U.S. Mortgage Finance III, LLC, a Delaware limited liability company, without recourse and without representation or warranty (express or implied).

[Signature on Following Page]

# EXHIBIT "B"

CFN 2006R0182675
OR Bk 24252 Pgs 1818 - 1843; (26pgs)
RECORDED 02/21/2006 09:33:36
MTG DOC TAX 1,085.00
INTANG TAX 620.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:

BAC FLORIDA BANK
169 MIRACLE MILE, R-10
CORAL GABLES, FLORIDA 33134

This document was prepared by:

SASKIA ISSA
BAC FLORIDA BANK 169 MIRACLE
MILE R-10
CORAL GABLES, FL 33134

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated January 25, 2006 , together with all Riders to this document.
**(B) "Borrower"** is CHARLES BOWMAN MCCOMAS AND LEANDRA F. MCCOMAS, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is BAC FLORIDA BANK

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF FLORIDA

Lender's address is 169 MIRACLE MILE, R-10
CORAL GABLES, FLORIDA 33134

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated January 25, 2006. The Note states that Borrower owes Lender Three Hundred Ten Thousand and 00/100 Dollars (U.S. $310,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2036.

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the COUNTY [Type of Recording Jurisdiction] of MIAMI-DADE [Name of Recording Jurisdiction]:

CONDOMINIUM UNIT NO. R-801, IN DAVID WILLIAM HOTEL CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 14380, AT PAGE 2742 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, TOGETHER WITH ALL APPURTENANCES THERETO.

Parcel ID Number: 30-4117-034-0070 which currently has the address of
700 BILTMORE WAY, #801 [Street]
CORAL GABLES [City], Florida 33134 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

1418455950

Initials: [signature]

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

1418455950

Initials: ________

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

1418455950

Initials: ________

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_______________ (Seal)
CHARLES BOWMAN MCCOMAS -Borrower

700 BILTMORE WAY, #801
CORAL GABLES, FLORIDA 33134 (Address)

_______________ (Seal)
LEANDRA F. MCCOMAS -Borrower

700 BILTMORE WAY, #801
CORAL GABLES, FLORIDA 33134 (Address)

_______________ (Seal) -Borrower

(Address)

_______________ (Seal) -Borrower

(Address)

_______________ (Seal) -Borrower

(Address)

_______________ (Seal) -Borrower

(Address)

_______________ (Seal) -Borrower

(Address)

_______________ (Seal) -Borrower

(Address)

1418455950

STATE OF FLORIDA, MIAMI-DADE County ss:

The foregoing instrument was acknowledged before me this 25th day of January, 2006 by CHARLES BOWMAN MCCOMAS and LEANDRA F. MCCOMAS

who is personally known to me or who has produced , as identification.

Notary Public

Stefanie DeCaterino
My Commission DD200033
Expires April 3, 2007

1418455950

VMP-6(FL) (0005).02

Initials:

Form 3010 1/01

20009-16

# FIXED/ADJUSTABLE RATE RIDER

**(One-Year Treasury Index - Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 25th day of January, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to BAC FLORIDA BANK

("Lender") of the same date and covering the property described in the Security Instrument and located at:

700 BILTMORE WAY, #801, CORAL GABLES, FLORIDA 33134
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 6.8750 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of February, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

1418455950
**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX** - Single Family - **Fannie Mae Uniform Instrument**
**Form 3182 1/01**
VMP-843R (0405)
Page 1 of 4 Initials: ______
VMP Mortgage Solutions, Inc.
(800)521-7291
20349-01

Book24252/Page1834 CFN#20060182675 Page 17 of 26

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Fourth percentage points ( 3.2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.8750 % or less than 4.8750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.8750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1418455950

Initials: ________

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_________________________ (Seal)
CHARLES BOWMAN MCCOMAS -Borrower

_________________________ (Seal)
LEANDRA F. MCCOMAS -Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

1418455950

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 25th day of January, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to BAC FLORIDA BANK

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

700 BILTMORE WAY, #801, CORAL GABLES, FLORIDA 33134
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

DAVID WILLIAM HOTEL CONDOMINIUM
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

1418455950

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP-8R (0411) Form 3140 1/01
Page 1 of 3 Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291
20215-01

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

| | |
|---|---|
| (Seal) CHARLES BOWMAN MCCOMAS -Borrower | (Seal) LEANDRA F. MCCOMAS -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

1418455950

# 1-4 FAMILY RIDER
**(Assignment of Rents)**

THIS 1-4 FAMILY RIDER is made this 25th day of January, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to BAC FLORIDA BANK

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 700 BILTMORE WAY, #801, CORAL GABLES, FLORIDA 33134

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

1418455950

Initials

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

| | |
|---|---|
| _____ (Seal) CHARLES BOWMAN MCCOMAS -Borrower | _____ (Seal) LEANDRA F. MCCOMAS -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | _____ (Seal) -Borrower |

1418455950

EXHIBIT "C"

CFN 2006R1135293
OR Bk 25030 Pg 0225; (1pg)
RECORDED 10/22/2006 07:17:58
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

This Space Above for Recorder's Use only

BAC Loan Number: 1418455950
State of Florida
County: MIAMI-DADE
Prepared by BAC Florida Bank
169 Miracle Mile R-10
Coral Gables, Florida 33134

**ASSIGNMENT OF MORTGAGE**

**FOR THE VALUE RECEIVED,** the undersigned, BAC Florida Bank, existing under the laws of the State of Florida, whose address is 169 Miracle Mile R-10. Coral Gables, Florida, hereby grants, assigns and transfers to U. S. Mortgage Finance II, LLC, a Delaware limited liability company, whose address is 1007 North Orange Street, Suite 1200, Wilmington, Delaware, all of the undersigned's right, title and interest in and to that certain Mortgage recorded in the Public Records of MIAMI-DADE County, State of Florida, and is described as follows:

Original Mortgagor: MCCOMAS, CHARLES BOWMAN
MCCOMAS, LEANDRA F
Original Mortgagee: BAC FLORIDA BANK
Dated: 1/25/2006
Date Recorded: 2/21/2006
File Number: 2006R0182675
Official Records Book: 24252 Page: 1818-1843

Together with the Note described or referred to in said Mortgage, money due and to become due thereon with interest, and all rights accrued under said Mortgage, without recourse.

Witness:

Luisa Bravo

Isela Machado

BAC Florida Bank, formerly known as
Popular Bank of Florida

Awilda Bonet, Vice President
Loan Operations

State of Florida }
} SS:
County of Miami-Dade }

I hereby certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgements, personally appeared Awilda Bonet, Vice President, BAC Florida Bank, who is personally known to me, and who executed the foregoing instrument, who acknowledged before me that she executed same and an oath was not taken. Witness my hand and official seal in the County and State aforesaid this 11th day of April 2006.

Maria Jose Gait, Notary Public
Commission #: 312957
Commission Expires July 30, 2008

MARIA JOSE GAIT
MY COMMISSION # DD312952
EXPIRES: July 30, 2008
1-800-3-NOTARY Fl. Notary Discount Assoc. Co.

# EXHIBIT "D"

CFN 2011R0373292
OR Bk 27714 Pgs 4715 - 4725; (11pgs)
RECORDED 06/08/2011 11:34:46
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument was prepared by:
AnnaKaye Williams, Esq.
Law Offices of AnnaKaye Williams, P.A.
1239 NE 8th Street
Homestead, FL 33033
Loan No. 1418455950

## MORTGAGE AND NOTE MODIFICATION AND EXTENSION AGREEMENT

THIS AGREEMENT made this 30 day of March, 2011, by and between **CHARLES BOWMAN MCCOMAS AND LEANDRA F. MCCOMAS, HUSBAND AND WIFE** (hereinafter referred to as "Borrower" or "Mortgagor") with a mailing address of 700 Biltmore Way #801 Miami, FL 33134 and **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY** (hereinafter referred to as "Lender" or "Mortgagee") with a mailing address of 1007 North Orange Street, Suite 1200, Wilmington, Delaware.

WHEREAS, on January 25, 2006, Borrower executed an InterestFirst Adjustable Rate Note in the original principal amount of Three Hundred Ten Thousand & 00/100 Dollars ($310,000.00) (hereinafter referred to as the "Note") in favor of BAC FLORIDA BANK which Note was secured by a Mortgage (hereinafter referred to as the "Mortgage") on the following described real property:

> **Unit R-801 of David William Hotel Condominium, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Book 14380, Page 2742, of the Public Records of Miami-Dade County, Florida, and any amendments thereto, together with its undivided share in the common elements.**

which Mortgage was recorded in Official Records Book 24252, at Page 1818, of the Public Records of Miami-Dade County, Florida. Said Note and Mortgage were subsequently assigned to **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY**, by virtue of an Assignment of Mortgage recorded in O.R. Book 25030, at Page 225, of the Public Records of Miami-Dade County, Florida. The terms of said Note and Mortgage were later modified in a Stipulation Agreement dated August 18, 2010, ~~attached hereto as Exhibit "A."~~

WHEREAS, the principal balance due under the Note is presently **Three Hundred Nine Thousand Nine Hundred Seventy Four & 26/100 Dollars ($309,974.26)**; and

WHEREAS, the Borrower and Lender have agreed to modify the terms of the Mortgage and Note to modify the terms of the Note and extend the maturity date;

NOW THEREFORE, it is agreed as follows:

1. The foregoing recitals are true and correct.

2. The Adjustable Rate Rider attached to the Mortgage is hereby substituted by the Adjustable Rate Rider attached as **Exhibit "~~B~~" "A"** to this Agreement.

3. Borrower simultaneously with the execution of this Agreement has executed and delivered to Lender an InterestFirst Adjustable Rate Note containing new terms of repayment of the loan in the amount of **$309,974.26** (hereinafter referred to as the "New Loan Amount") and extending the Maturity Date as provided therein. A copy of the InterestFirst Adjustable Rate Note is attached hereto as **Exhibit "~~C~~ B"** The Mortgage secures all obligations of the Borrower to the Lender owing and to be advanced under the InterestFirst Adjustable Rate Note.

4. Borrower acknowledges and agrees that the total indebtedness of Borrower owed and to be owed to Lender under the Loan shall be repaid in accordance with the terms of the InterestFirst Adjustable Rate Note. The InterestFirst Adjustable Rate Note is secured by the lien of the Mortgage. The Mortgage as modified by this Mortgage and Note

**Initials:** BM LM 

Modification and Extension Agreement shall continue to secure all of the obligations of Borrower to Lender whether now existing or hereafter created.

5. Borrower further acknowledges and agrees that in consideration of Lender this date granting this Agreement and as inducement for Lender this date granting this Agreement, Borrower agrees to the inclusion of the following paragraph to the Mortgage and the terms therein, as contained below:

   Borrower shall not apply for or avail himself/herself of any appraisement, valuation, redemption, stay, advance, or exemption laws, or any so-called "moratorium laws," now existing or subsequently enacted, in order to prevent or hinder the enforcement or foreclosure of this mortgage, and Borrower now waives the benefit of those laws. Borrower, for himself/herself, their heirs, successors and/or assigns and all who may claim through or under Borrower, waive any and all rights to have the property and estates comprising the property marshaled upon any foreclosure of the lien of this mortgage, and agrees that any court having jurisdiction to foreclose such lien may order the property sold in its entirety. Mortgagor further waives any and all rights of redemption from foreclosure and from sale under any order or decree of foreclosure of the lien created by this mortgage. for themselves, their heirs, successors and/or assigns and on behalf of:

   i. any trust estate of which the premises are a part;
   ii. all beneficially interested persons;
   iii. each and every person acquiring any interest in the property or title to the premises subsequent to the date of this mortgage; and
   iv. all other persons to the extent permitted by the provisions of the laws of Florida, the State in which the premises are located.

   Borrower, the heirs, successors and/or assigns of Borrower, further acknowledge and agree, to the extent allowable by law at the time of any foreclosure proceedings, that he/she/they hereby waive their right to service of process in accordance with Section 48 of Florida Statutes and further waive any defenses he/she/they may have in any foreclosure proceedings by Lender, whether at law or in equity.

6. Nothing in this Mortgage and Note Modification and Extension Agreement will invalidate, impair or release any term or condition in the Note or the Mortgage. The Note and Mortgage will continue in full force and effect. Any terms or conditions in the Note or the Mortgage not modified in this agreement has the same force and effect as any term which is modified herein. Borrower ratifies and confirms the terms and conditions of the Note and the Mortgage, and covenants and agrees to perform and comply with the terms and conditions, as modified herein.

7. Nothing in this agreement will be understood or construed as a substitution, transference or novation of the existing debt.

8. Lender reserves all rights it has against all parties, including but not limited to all parties secondarily liable, if any.

9. The parties hereto hereby knowingly, voluntarily and intentionally waive the right either may have to a trial by jury in respect to any litigation based hereon, or arising out of, under, or in connection with this loan and any increases, amendments, advances, modifications or renewals thereto. This provision is a material inducement for Lender entering into this loan, and any increases, amendments, advances, modifications or renewals thereto.

10. Borrower does hereby represent and warrant to Lender that the Mortgage constitutes a valid and enforceable first lien upon all premises now encumbered thereby and secures payment of the indebtedness and performance of the obligations on Borrower's part to be paid and performed under the Note as amended herein and the InterestFirst Adjustable Rate Note as secured by the Mortgage.

11. Borrower hereby represents and warrants to Lender that in the event any documentary stamp tax, intangible or other taxes, fees or other charges and penalties and interest

Initials

thereon (hereinafter collectively referred to as "Taxes"), are due or become due by reason of the transactions described in this instrument, Borrower agrees to pay any of such Taxes due immediately upon notice that any of such Taxes are due and payable notwithstanding that Borrower may be contesting same.

12. This agreement is binding upon and inures to the benefit of the heirs, executors, administrators, representatives, or successors and assigns of the respective parties.

13. All rights and obligations contained in this Agreement are subject to any requirements and limitations of applicable law. Applicable law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against any agreement by contract. In the event that any provision or clause of this agreement or other documents referred to or attached hereto conflict with Applicable Law, such conflict shall not affect other provisions of this Agreement or such other documentation attached hereto and/or referred to herein which can be given effect without the conflicting provisions.

Except as modified herein, all of the terms of the Mortgage shall remain in full force and effect.

**BORROWER:**

**CHARLES BOWMAN MCCOMAS**

STATE OF Florida )
COUNTY OF Miami Dade)

I HEREBY CERTIFY that on this 30 day of March, 2011, before me, an officer duly authorized to take acknowledgements, personally appeared CHARLES BOWMAN MCCOMAS, who has produced drivers license as identification, or ~~who is personally known to me,~~ who did not take an oath, and who acknowledged before me that she executed the same.

Witness my hand and official seal the date aforesaid.

Notary Public Christy Espinosa

CHRISTY ESPINOSA
MY COMMISSION # DD 942847
EXPIRES: December 17, 2013
Bonded Thru Notary Public Underwriters

**BORROWER:**

**LEANDRA F. MCCOMAS**

STATE OF Florida )
COUNTY OF Miami Dade)

I HEREBY CERTIFY that on this 30 day of March, 2011, before me, an officer duly authorized to take acknowledgements, personally appeared LEANDRA F. MCCOMAS, who has produced drivers license as identification, ~~or who is personally known to me, who~~ did not take an oath, and who acknowledged before me that she executed the same.

Witness my hand and official seal the date aforesaid.

Notary Public

Christy Espinosa

CHRISTY ESPINOSA
MY COMMISSION # DD 942847
EXPIRES: December 17, 2013
Bonded Thru Notary Public Underwriters

**Initials:**

**LENDER:**

**U.S. MORTGAGE FINANCE II, LLC, a Delaware Limited Liability Company**

By: ____________________
Name: THEODORE CHRISTAKOS
Title: VP. PARTNER

Witness Name: LISA D SETNER

Witness Name: C. Perez

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this 11 day of April, 2011, before me, an officer duly authorized to take acknowledgements, personally appeared THEODORE CHRISTAKOS, as VP/PARTNER of U.S. MORTGAGE FINANCE II. LLC, a Delaware Limited Liability Company, who is personally known to me or who has produced ____________________ as identification, and who did not take an oath, and acknowledged before me that he executed the same.

Witness my hand and official seal the date aforesaid.

____________________
Notary Public

C. PEREZ
Notary Public - State of Florida
My Comm. Expires Dec 1, 2013
Commission # DD 943559
Bonded Through National Notary Assn.

Initials: ______

# ADJUSTABLE RATE RIDER

**(1 Year Treasury Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 30th day of MARCH, 2011, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**700 BILTMORE WAY, #801**
**CORAL GABLES, FLORIDA 33134**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **3.0%**. The Note provides for changes in the interest rate and the monthly payments as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **NOVEMBER, 2013**, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Quarter percentage points (3.25%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **5. 0%** or less than **3.25%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.0%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay

Exhibit "A"

the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 2 of this Adjustable Rate Rider.

CHARLES BOWMAN MCCOMAS - Borrower

LEANDRA F. MCCOMAS - Borrower

# InterestFirst Period ADJUSTABLE RATE NOTE

(One-Year Treasury Index—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

EFFECTIVE AS OF NOVEMBER 1, 2010

DATED: March 30, 2011 (Date) — CORAL GABLES (City) — FLORIDA (State)

700 BILTMORE WAY, #801
CORAL GABLES, FLORIDA 33134
(Property Address)

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $309,974.26 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.0%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on **DECEMBER 1, 2010** before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning **DECEMBER 1, 2013** on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **NOVEMBER 1, 2040,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Exhibit "B"

I will make my monthly payments at **BAC FLORIDA BANK, 169 MIRACLE MILE, R-1O, CORAL GABLES, FL 33134,** or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of **U.S. $774.94** before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first day of NOVEMBER, 2013**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Quarter percentage points (3.2500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

INITIALS

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **5.0% or less than 3.25%.** Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.0%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

INITIALS ______

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 7.0000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

INITIALS ______

OR BK 27714 PG 4725
LAST PAGE

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 5 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

CHARLES BOWMAN MCCOMAS

LEANDRA F. MCCOMAS

INITIALS

InterestFirst ADJUSTABLE RATE NOTE - ONE YEAR TREASURY INDEX
No Prepayment Penalty
Fannie Mae Uniform Instrument

*Page 5 of 5*

Book27714/Page4725 CFN#20110373292 Page 11 of 11

Filing # 35355380 E-Filed 12/09/2015 03:57:36 PM

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-006731-CA-01

U.S. MORTGAGE FINANCE II, LLC, a Delaware limited liability company,

Plaintiff,

vs.

CHARLES B. MCCOMAS a/k/a CHARLES BOWMAN MCCOMAS, Individually; LEANDRA F. MCCOMAS, Individually; DAVID WILLIAM HOTEL CONDOMINIUM ASSOCIATION, INC., a Florida corporation; DOUGLAS J. KING ENTERPRISES, INC., a Florida corporation; UNKNOWN TENANT #1; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES OR OTHER CLAIMANTS,

Defendants.

_______________________________________/

**NOTICE OF FILING**

COMES NOW, Plaintiff, U.S. MORTGAGE FINANCE III, LLC, by and through undersigned counsel, and gives notice of filing the following in the instant case:

**ORIGINAL MORTGAGE AND NOTE MODIFICATION AND EXTENSION AGREEMENT DATED MARCH 30, 2011**

CASE NO: 2015-006731-CA-01

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of ________ December, 2015 a true and correct copy of the foregoing has been furnished via email to the following at the email address indicated below:

Attorneys for David William Hotel
Condominium Association, Inc.
Siegfried, Rivera, Hyman, Lerner, De la Torre,
Mars & Sobel, P.A.
8211 West Broward Blvd., Suite 250
Plantation, FL 33324
Awilda Esteras, Esq.
Email: Association9@srhl-law.com
Email: collections4@srhl-law.com
Email: aesteras@srhl-law.com

Additionally, I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. mail this 9th day of December, 2015 to the following:

LEANDRA F. MCCOMAS
700 Biltmore Way #801
Coral Gables, FL 33134

CHARLES B. MCCOMAS a/k/a CHARLES BOWMAN MCCOMAS
700 Biltmore Way #801
Coral Gables, FL 33134

Douglas J. King Enterprises, Inc.
c/o Registered Agent
Douglas J. King
15604 SW 73 CT
Miami, FL 33157

By: s/Kathleen M. Sales, Esq.
Kathleen M. Sales/FBN: 0143200
Primary Email: kms@martlaw.com
Secondary Email: service@martlaw.com
GUTIERREZ & ASSOCIATES
Attorneys for Plaintiff
U.S. MORTGAGE FINANCE III, LLC
1200 Brickell Avenue, Suite 350
Miami, Florida 33131
Tel: 305) 577-4500
Fax: (305) 577-8690

CFN 2011R0373292
OR Bk 27714 Pgs 4715 - 4725 (11pgs)
RECORDED 06/08/2011 11:31:46
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This instrument was prepared by:
AnnaKaye Williams, Esq.
Law Offices of AnnaKaye Williams, P.A.
1239 NE 8th Street
Homestead, FL 33033
Loan No. [redacted]

# MORTGAGE AND NOTE MODIFICATION AND EXTENSION AGREEMENT

THIS AGREEMENT made this 30 day of March, 2011, by and between **CHARLES BOWMAN MCCOMAS AND LEANDRA F. MCCOMAS, HUSBAND AND WIFE** (hereinafter referred to as "Borrower" or "Mortgagor") with a mailing address of 700 Biltmore Way #801 Miami FL 33134 and **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY** (hereinafter referred to as "Lender" or "Mortgagee") with a mailing address of 1007 North Orange Street, Suite 1200, Wilmington, Delaware.

WHEREAS, on January 25, 2006, Borrower executed an InterestFirst Adjustable Rate Note in the original principal amount of Three Hundred Ten Thousand & 00/100 Dollars ($310,000.00) (hereinafter referred to as the "Note") in favor of BAC FLORIDA BANK which Note was secured by a Mortgage (hereinafter referred to as the "Mortgage") on the following described real property:

> **Unit R-801 of David William Hotel Condominium, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Book 14380, Page 2742, of the Public Records of Miami-Dade County, Florida, and any amendments thereto, together with its undivided share in the common elements.**

which Mortgage was recorded in Official Records Book 24252, at Page 1818, of the Public Records of Miami-Dade County, Florida. Said Note and Mortgage were subsequently assigned to **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY**, by virtue of an Assignment of Mortgage recorded in O.R. Book 25030, at Page 225, of the Public Records of Miami-Dade County, Florida. The terms of said Note and Mortgage were later modified in a Stipulation Agreement dated August 18, 2010, ~~attached hereto as **Exhibit "A."**~~

WHEREAS, the principal balance due under the Note is presently **Three Hundred Nine Thousand Nine Hundred Seventy Four & 26/100 Dollars ($309,974.26)**; and

WHEREAS, the Borrower and Lender have agreed to modify the terms of the Mortgage and Note to modify the terms of the Note and extend the maturity date;

NOW THEREFORE, it is agreed as follows:

1. The foregoing recitals are true and correct.

2. The Adjustable Rate Rider attached to the Mortgage is hereby substituted by the Adjustable Rate Rider attached as **Exhibit ~~"B"~~ "A"** to this Agreement.

3. Borrower simultaneously with the execution of this Agreement has executed and delivered to Lender an InterestFirst Adjustable Rate Note containing new terms of repayment of the loan in the amount of **$309,974.26** (hereinafter referred to as the "New Loan Amount") and extending the Maturity Date as provided therein. A copy of the InterestFirst Adjustable Rate Note is attached hereto as **Exhibit ~~"C"~~ "B"** The Mortgage secures all obligations of the Borrower to the Lender owing and to be advanced under the InterestFirst Adjustable Rate Note.

4. Borrower acknowledges and agrees that the total indebtedness of Borrower owed and to be owed to Lender under the Loan shall be repaid in accordance with the terms of the InterestFirst Adjustable Rate Note. The InterestFirst Adjustable Rate Note is secured by the lien of the Mortgage. The Mortgage as modified by this Mortgage and Note

Initials: [initials]

LENDER:

U.S. MORTGAGE FINANCE II, LLC, a Delaware Limited Liability Company

By: ______________________

Name: THEODORE CHRISTAKOS

Title: VP PARTNER

Witness Name: LISA D SELMER

Witness Name: C Perez

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this 11 day of April, 2011, before me, an officer duly authorized to take acknowledgements, personally appeared THEODORE CHRISTAKOS, as VP/PARTNER of U.S. MORTGAGE FINANCE II LLC, a Delaware Limited Liability Company, who is personally known to me or who has produced ______________ as identification, and who did not take an oath, and acknowledged before me that he executed the same.

Witness my hand and official seal the date aforesaid.

Notary Public ______________________

C. PEREZ
Notary Public - State of Florida
My Comm. Expires Dec 1, 2013
Commission # DD 943559
Bonded Through National Notary Assn.
NOTARY PUBLIC
STATE OF FLORIDA

ORIGINAL

Initials: ______

# ADJUSTABLE RATE RIDER

(1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th day of March, 2011 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**700 BILTMORE WAY, #801**
**CORAL GABLES, FLORIDA 33134**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **3.0%**. The Note provides for changes in the interest rate and the monthly payments as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) **Change Dates**

The interest rate I will pay may change on the first day of **NOVEMBER, 2013**, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) **The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Quarter percentage points (3.25%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **5. 0%** or less than **3.25%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.0%**.

(E) **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay

Exhibit "A"

the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 2 of this Adjustable Rate Rider.

CHARLES BOWMAN MCCOMAS - Borrower

LEANDRA F. MCCOMAS - Borrower

ORIGINAL

# InterestFirst Period ADJUSTABLE RATE NOTE

(One-Year Treasury Index—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

EFFECTIVE AS OF NOVEMBER 1, 2010
DATED: March 30, 2011 (Date) CORAL GABLES (City) FLORIDA (State)

700 BILTMORE WAY, #801
CORAL GABLES, FLORIDA 33134
(Property Address)

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $309,974.26 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **U.S. MORTGAGE FINANCE II, LLC, A DELAWARE LIMITED LIABILITY COMPANY.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.0%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on **DECEMBER 1, 2010** before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning **DECEMBER 1, 2013** on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **NOVEMBER 1, 2040**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Exhibit "B"

I will make my monthly payments at **BAC FLORIDA BANK, 169 MIRACLE MILE, R-10, CORAL GABLES, FL 33134**, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of **U.S. $774.94** before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first day of NOVEMBER, 2013**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and One Quarter percentage points (3.2500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **5.0% or less than 3.25%.** Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.0%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 7.0000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

INITIALS ____

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 5 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Charles B. McComas
CHARLES BOWMAN MCCOMAS

Leandra F. McComas
LEANDRA F. MCCOMAS

InterestFirst ADJUSTABLE RATE NOTE - ONE YEAR TREASURY INDEX
No Prepayment Penalty
Fannie Mae Uniform Instrument

INITIALS BM/LM

# EXHIBIT "A"

This instrument prepared by
and after recorded return to:

Renaldy J. Gutierrez, Esq.
Gutierrez & Associates
1200 Brickell Avenue, Suite 350
Miami, Florida 33131

Loan #1418455950

## ASSIGNMENT OF NOTE, MORTGAGE AND LOAN DOCUMENTS

**U.S. MORTGAGE FINANCE II, LLC,** a Delaware limited liability company ("***Assignor***"), having a mailing address of 1007 North Orange Street, Ste. 1200, Wilmington, Delaware 19801, in consideration of Ten Dollars and other good and valuable consideration in hand paid by **U.S. MORTGAGE FINANCE III, LLC,** a Delaware limited liability company ("***Assignee***"), having a mailing address of 1007 North Orange Street, Ste. 1200, Wilmington, Delaware 19801, receipt whereof is hereby acknowledged, does hereby grant, assign and transfer unto Assignee all of the Assignor's right, title and interest in and to the following instruments and documents and the indebtedness and other obligations evidenced and secured thereby:

(i) Mortgage executed by Charles Bowman McComas and Leandra F. McComas, husband and wife ("***Maker***") to BAC Florida Bank, dated January 25, 2006 and recorded on February 21, 2006 in Official Record Book 24252, Page 1818, of the Public Records of Miami-Dade County, Florida (the "***Original Mortgage***"), as modified by Mortgage and Note Modification and Extension Agreement made by Maker in favor of Assignor, dated March 30, 2011 and recorded on June 8, 2011 in Official Record Book 27714, Page 4715 of the Public Records of Miami-Dade County, Florida (together with the Original Mortgage, the "***Mortgage***");

(ii) that certain Adjustable Rate Note in the original principal amount of $310,000.00, dated January 25, 2006, made by Maker to the order of BAC Florida Bank (the "***Original Note***"), as modified by Adjustable Rate Note in the principal amount of $309,974.26, dated March 30, 2011, made by Maker to the order of Assignor (together with the Original Note, the "***Note***"); and

(iii) any and all other documents evidencing or securing the loan evidenced by the Note (collectively, with the Note and the Mortgage, the "***Loan Documents***").

The Original Note, the Original Mortgage and the other Loan Documents relating thereto were assigned by BAC Florida Bank to Assignor pursuant to that certain Assignment of Mortgage recorded on October 22, 2006 in Official Record Book 25030, Page 225, of the Public Records of Miami-Dade County, Florida.

# EXHIBIT "F"

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-006731-CA-01

U.S. MORTGAGE FINANCE II, LLC, a Delaware limited liability company,

Plaintiff,

vs.

CHARLES B. MCCOMAS a/k/a CHARLES BOWMAN MCCOMAS, Individually; LEANDRA F. MCCOMAS, Individually; DAVID WILLIAM HOTEL CONDOMINIUM ASSOCIATION, INC., a Florida corporation; DOUGLAS J. KING ENTERPRISES, INC., a Florida corporation; UNKNOWN TENANT #1; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES OR OTHER CLAIMANTS,

Defendants.

_______________________________________/

**ORDER OF SUBSTITUTION AS TO PARTY PLAINTIFF**

**THIS CAUSE** having come on before the Court on October 22, 2015 on Plaintiff's Motion for Substitution, and the Court being otherwise duly advised in the premises, it is

**ORDERED** that Plaintiff's Motion be and the same is hereby granted. U.S. MORTGAGE FINANCE III, LLC is hereby substituted for U.S. MORTGAGE FINANCE II, LLC in this matter and revising the caption as requested herein.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 10/13/15.

Gill S. Freeman

GILL S. FREEMAN
CIRCUIT COURT JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**IN RE:**

**CASE NO.: 15-20459-BKC-LMI**
PROCEEDING UNDER CHAPTER 13

CHARLES B MCCOMAS

DEBTOR /

**NOTICE OF DEPOSIT OF FUNDS WITH THE UNITED STATES BANKRUPTCY COURT CLERK**

**NOTICE IS HEREBY GIVEN THAT:**

The Trustee has a balance of **$2,012.72** remaining in her bank account which represents unpresented checks drawn and mailed to debtor(s)/creditor(s) in the above named case. Your trustee has made a good faith effort to verify the correct mailing address for said debtors(s)/creditor(s) and deliver the funds before pressenting this notice. More than sufficient time has passed for these checks to be presented for payment, or the creditor has returned funds indicating they refuse the funds.

Attached and made a part of this notice, is a list, pursuant to FRBP 3011, of the names, claim numbers and addresses of the debtor(s)/creditor(s) and the amounts to which each is entitled.

**WHEREFORE,** your Trustee hereby gives notice that the above-stated sum has been deposited with the Clerk of the United States Bankruptcy Court, Southern District of Florida, to effect closing this estate.

Date: 8-3-16

NANCY K. NEIDICH, ESQUIRE
STANDING CHAPTER 13 TRUSTEE
P.O. BOX 279806
MIRAMAR, FL 33027-9806

**COPIES FURNISHED TO:**

CHARLES B MCCOMAS
700 BILTMORE WAY, #801
CORAL GABLES, FL 33134

YONI MARKHOFF, ESQUIRE
1835 NE MIAMI GARDENS DRIVE
SUITE 143
NORTH MIAMI BEACH, FL 33179

U.S. TRUSTEE
51 S.W. 1ST AVENUE
MIAMI, FL 33130

BAC FLORIDA BANK
1 CORPORATE DR #360
LAKE ZURICH, IL 60047

BAC FLORIDA BANK
1 CORPORATE DR #360
LAKE ZURICH, IL 60047

NOTICE OF DEPOSIT OF FUNDS
CASE NO.: 15-20459-BKC-LMI

ATTACHMENT

**NOTICE OF DEPOSIT OF FUNDS WITH THE UNITED STATES BANKRUPTCY COURT CLERK**

**ATTACHMENT - LISTING OF CLAIMANT**

**CASE NO.: 15-20459-BKC-LMI**

BAC FLORIDA BANK
1 CORPORATE DR #360
LAKE ZURICH, IL 60047

$1,653.76

UNDELIVERABLE/STALE
CLAIM REGISTER# 0

BAC FLORIDA BANK
1 CORPORATE DR #360
LAKE ZURICH, IL 60047

$358.96

UNDELIVERABLE/STALE
CLAIM REGISTER# 0